**OCHOA REALTY CORP.,**
**Plaintiff, Appellant,**

**v.**

**Rafael A. FARIA, et al.,**
**Defendants, Appellees.**

**No. 86–1874.**

United States Court of Appeals,
First Circuit.

Argued March 4, 1987.

Decided April 6, 1987.

Robert E. Schneider, Jr., San Juan, P.R., with whom Juan E. Rodriguez Diaz, Hato Rey, P.R., Wallace Gonzalez Oliver, and Jorge R. Jimenez, San Juan, P.R., were on brief for plaintiff, appellant.

Reina Colon de Rodriguez, Asst. Sol. Gen., with whom Rafael Ortiz Carrion, Sol. Gen., and Norma Cottii Cruz, Deputy Sol. Gen., San Juan, P.R., were on brief for defendants, appellees Rafael A. Faria, Luis R. Landrau and Dario Hernandez Torres.

Alvaro R. Calderon, Jr., Hato Rey, P.R., for defendant, appellee Luis F. Quinones.

Before BOWNES and SELYA, Circuit Judges, and PETTINE,* Senior District Judge.

* Of the District of Rhode Island, sitting by desig-

SELYA, Circuit Judge.

Once again, we are confronted with a challenge to activities undertaken by public officials in the Commonwealth of Puerto Rico in the course of land-use planning and related matters. The plaintiff/appellant, Ochoa Realty Corporation (Ochoa), owned three contiguous parcels of land in Hato Rey, totalling roughly 60,732.5 square meters in aggregate area. In a damage action which it filed in the United States District Court for the District of Puerto Rico, Ochoa alleged an unconstitutional "taking" of this large and valuable tract. It sought declaratory and injunctive redress, money damages, and associated relief under 42 U.S.C. §§ 1983, 1985. Later, the Commonwealth commenced an eminent domain proceeding (known as an "expropriation" proceeding) in a local court. Ochoa, preferring the forum of its choice, resorted to 28 U.S.C. § 1441(b) and removed the expropriation case to the federal district court.

In a series of decisions handed down at various intervals, the district judge dispatched all aspects of the two cases short of trial. On September 30, 1985, she remanded the expropriation case to the superior court. On April 14, 1986, she granted summary judgment in favor of one defendant (Quinones) in the civil rights action. Within the next few days, she jettisoned all of the prayers for declaratory and injunctive relief as moot, and dismissed the damage claims against two more defendants (Faria, Landrau). *See Ochoa Realty Corp. v. Faria*, 634 F.Supp. 723 (D.P.R.1986). On June 9, 1986, the last remaining defendant's motion to dismiss was granted. The district court denied Ochoa's motions to amend the resultant judgments. Fed.R. Civ.P. 52(b). This appeal ensued.

## I. BACKGROUND

 Because the district court did not reach the merits of the suits, we accept as true the well-pleaded factual averments contained in Ochoa's latest version of its civil rights complaint, and construe them most hospitably to the appellant's cause.

nation.

*See Kugler v. Helfant,* 421 U.S. 117, 125–26 & n. 5, 95 S.Ct. 1524, 1531 & n. 5, 44 L.Ed.2d 15 (1975); *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.1987). "We exempt, of course, those 'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise, and likewise eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" *Id.* (citation omitted).[1] We limit our account, however, to those facts which are necessary to place the issues on appeal into perspective and to explain why we affirm the judgments below.

The plaintiff charged that, sometime prior to 1974, the defendants and their predecessors in office, acting under color of law, designed the so-called Ramal Este highway to run through Ochoa's property. The defendants, it was said, shelved this plan in 1978, but replaced it with a mass transit project known as Agua-Guagua. According to the appellant, these projects so fragmented the subject property as to "render it useless and destroy its value." [2]

In October 1984, Ochoa sued, alleging that its property had been taken without due process of law and without just compensation. The named defendants, appellees before us, eventually comprised the following public officials: Rafael A. Faria, former secretary of Puerto Rico's Department of Transportation and Public Works; Dario Hernandez-Torres, Faria's successor; Luis E. Landrau, former executive director of the Puerto Rico Highway Authority; and Luis F. Quinones, former executive director of the Puerto Rico Land Administration. Ochoa demanded, *inter alia,* money damages in the amount of $18,000,000.

In March of 1985, the Commonwealth instituted the expropriation action in Puerto Rico superior court. These condemnation proceedings were aimed at only those portions of the tract which would be used to build the proposed Agua-Guagua system. In connection with this initiative, the Commonwealth deposited $1,023,151 (its estimate of compensation due vis-a-vis its partial acquisition of the appellant's land) with the court. Ochoa swiftly removed the expropriation suit to federal court, so as to effect consolidation with its pending § 1983 action.

There followed a spate of activity, much of which we have already catalogued. It suffices to say that the sum and substance of the district court's orders was to return the expropriation case to the Commonwealth forum and to extinguish all of the plaintiff's pending federal civil rights claims. In so doing, the district court found that Ochoa's prayers for equitable relief—the plaintiff had requested that the court, in the absence of any formal exercise of the power of eminent domain, enjoin further work on Agua-Guagua and order the defendants to declassify the property, thereby restoring it to its previous state and condition—had been mooted by the institution of the expropriation proceedings, and that no facts had been put forward sufficient to make out a federally cognizable damage claim against any of the named defendants.

---

1. Because this appeal follows a district court's dismissal of the damage action as to some defendants under Fed.R.Civ.P. 12(b)(6) and the concomitant grant of summary judgment in favor of another defendant, *see* Fed.R.Civ.P. 56, the applicable standard is not precisely uniform as it pertains to our review of the orders of the district court in their ensemble. Though specific averments in a complaint can be enough to stave off dismissal under Rule 12(b)(6), "[a]llegations in pleadings normally cannot create a fact issue which will defeat a motion for summary judgment supported by affidavits which negate those allegations." *Keller v. Dravo Corp.,* 441 F.2d 1239, 1245 (5th Cir.1971), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972). For our purposes, however, such a highly technical distinction makes no meaningful difference. Giving appellant the benefit of the more relaxed rule, Ochoa nevertheless comes up empty.

2. As evidence of damage, plaintiff drew the district court's attention to two alleged episodes in the 1970s in which anticipated property sales misfired when prospective buyers learned of the pendency of Ramal Este. Ochoa further averred that, between 1980 and 1983, it had retained an architect and engineer to subdivide the tract into lots for development. The plans were dropped, however, when the local government agencies, most notably the Highway Authority and the Department of Transportation, failed to provide the necessary approvals.

## II. THE REMAND ORDER

 Once a suit has been removed from state to federal court—and Puerto Rico is for this purpose equivalent to a "state"— 28 U.S.C. § 1447(c) provides for remand if "the case was removed improvidently and without jurisdiction." Where, as here, a district court has exercised its power to remand under § 1447(c), the imperative of 28 U.S.C. § 1447(d) comes into play. That statute, with a narrow exception not applicable here,[3] declares in pertinent part that:

> [a]n order remanding a case to the State court from which it was removed is not reviewable on appeal, or otherwise,....

28 U.S.C. § 1447(d).

The Court has recognized that the statute means exactly what it says; the provision anent nonreviewability comprises an "unmistakabl[e] command[ ]." *Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977) (per curiam). *See also Noel v. McCain*, 538 F.2d 633, 635 (4th Cir.1976) (Section 1447(d) "denies appellate courts jurisdiction to review an order remanding a case because it does not raise a federal question...."); *Pennsylvania ex rel. Gittman v. Gittman*, 451 F.2d 155, 156–57 (3d Cir.1971) (per curiam) (similar).

The appellant claims that § 1447(d) does not preclude scrutiny of this remand order because of our holding in *James v. Bellotti*, 733 F.2d 989 (1st Cir.1984). That assertion is vapid. In *James*, the federal district court refused to remand a suit seeking injunctive relief—and then refused the injunction. An immediate appeal was taken. We pointed out that the "denial of an injunction is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1), and the refusal to remand to the state court, *though not directly appealable by itself,* is reviewable in conjunction with the interlocutory appeal." *Id.* at 992 (emphasis supplied). As can readily be appreciated, *James* reaffirmed, rather than undermined, the generic nonreviewability of orders touching upon remand.

Moreover, *James* differs from the case at bar in several material respects. We advert to but two. First, *James* did not involve a district court's remand order, but a district court's rebuff of a suggested remand. Second, there was only a single suit before the district court in the immediate *James* context; the (nonappealable) order declining remand was inextricably linked within the same case to the (appealable) order denying injunctive relief. That is simply not Ochoa's situation: the expropriation proceeding was a separate and distinct case, and the *only* order made therein was the district court's grant of the motion to remand. Unless § 1447(d) is to be ignored—a step which we have no warrant to take—Ochoa's disappointment with the remand cannot clear the towering jurisdictional hurdle erected by the Congress.

The court below quite plainly indicated that its remand of the condemnation case was bottomed on the lack of any cognizable federal question. The court expressly concluded that it was bereft of jurisdiction and rejected plaintiff's contrived argument that the proceedings arose under the federal Urban Mass Transportation Act, 49 U.S.C. §§ 1601 *et seq.* To be sure, the absence of federal question jurisdiction seems apparent. But, that is not the point. Whether or not the district judge was correct in her conclusion, Ochoa's appeal of the district court's remand order flies in the face of the "unmistakable command" of 28 U.S.C. § 1447(d). We have no jurisdiction to entertain it.

## III. EQUITABLE RELIEF

 Appellant next argues that the district court improperly dismissed its claims for declaratory and injunctive relief. We disagree, and briefly limn our reasons.

The court below dismissed these claims as moot because the Commonwealth had finally brought an expropriation action against those portions of the Ochoa property directly implicated by the project under design. The appellant does not dispute that the Commonwealth enjoys the sover-

---

**3.** The exception relates solely to removals effectuated under color of 28 U.S.C. § 1443. Ochoa achieved the removal of this case by invoking 28 U.S.C. § 1441(b). Petition for Removal ¶ 4.

eign power of eminent domain. And, it is the well settled law of Puerto Rico that condemnees like Ochoa, in addition to receiving fair compensation for land actually taken, are entitled to severance damages as recompense for injury resulting to the (untaken) remainder of the property in consequence of the expropriation. *See People v. Garcia,* 66 P.R.R. 478, 484 (1946). Given these verities, the district court saw no conceivable need for, or entitlement to, declaratory or injunctive relief. Nor do we.

Ochoa concedes that it can likely recoup severance damages under local law. It maintains, however, that its claims for prospective relief are nevertheless zoetic, because only portions of the site were condemned. The plaintiff argues that partial expropriation in fact advances the fragmentation of its land, and that severance damages fail to provide just compensation. What Ochoa is really postulating, it seems to us, is that the whole (the value of its entire landholding) is somehow greater than the sum of its three parts, *i.e.,* (1) the value of the land condemned, plus (2) the value of the remainder of the land (which Ochoa will still own), plus (3) the severance damages (representing any diminution in value of the remainder which can be attributed to the enforced division of the tract). The appellant's theorem is unacceptable to us as a matter of mathematics or as a matter of law.

Under the substantive law of the locus, an affected landowner can recover "as total compensation the amount of the market value of the parcel taken ... plus the damages to the remainder of the main property, which consists in the depreciation of the market value of the remainder before and after the taking." *Commonwealth v. Fonalledas,* 84 P.R.R. 552, 568 (1962). *See also id.* at 571-72. In light of the events of March 1985—most particularly, the formal use by the Commonwealth of its eminent domain power—further pursuit of the instant claims for declaratory and injunctive relief would be completely superfluous. Inasmuch as the appellant will have every opportunity to litigate the issue of just compensation in Puerto Rico's courts, and given that the expropriation proceedings allow for severance damages to compensate for any and all diminution in the post-taking worth of the remainder of the property, the district court's finding of mootness in respect to these equitable initiatives is unassailable.

## IV. DAMAGES

■ Like the other assignments of error which precede it, the appellant's argument that the district court improperly dismissed its damage claims under the "Takings Clause" of the federal Constitution must fail. In the first place, there is a substantial body of First Circuit precedent, recently reaffirmed, which has consistently abjured recognition of a federal damage remedy under 42 U.S.C. § 1983 in inverse condemnation actions. *See Culebras Enterprises v. Rivera Rios,* 813 F.2d 506, 509-12 (1st Cir.1987); *Citadel Corp. v. Puerto Rico Highway Authority,* 695 F.2d 31, 34 (1st Cir.1982), *cert. denied,* 464 U.S. 815, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *Pamel Corp. v. Puerto Rico Highway Authority,* 621 F.2d 33, 36 (1st Cir.1980). In the second place, Ochoa's fifth amendment claims are at best unripe—and thus not properly raised in a federal court.

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court set aside an award to a disgruntled developer on the ground that it was premature to pursue a federal damage remedy for an alleged taking before resorting to state law inverse condemnation procedures. The Court explained:

[T]he taking claim is not yet ripe [because] respondent did not seek compensation through the procedures the State has provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain and adequate provision for obtaining

compensation" exist at the time of the taking.

*Id.* 105 S.Ct. at 3121 (citations and footnotes omitted).

In *Culebras,* we noted that while no Puerto Rico statute provides expressly for an inverse condemnation anodyne, a series of decisions emanating from the Supreme Court of Puerto Rico strongly indicate that the Commonwealth is prepared to recognize the general availability of such a remedy in cases of regulatory takings. *See Culebras, supra,* at 513–14 (collecting cases). Chief Judge Campbell's opinion in *Culebras* exhaustively surveys and covers the precise question before us, and we have no need to reinvent this well-fashioned wheel.

Ochoa strives mightily, but in vain, to differentiate its case because "this is a taking claim and not a regulatory taking claim." Reply Brief at 2. We need not plumb these depths. The appellant bases the distinction which it perceives on Act No. 2, P.R. Laws Ann. tit. 32, §§ 2921–2922, enacted January 29, 1979, an enactment which, in essence, sets an outer limit of eight years as a reasonable time for subjecting land to "public purpose" zoning. But, the rights flowing from Act No. 2 were fully considered in *Culebras,* at 514–15 & n. 7, and were held insufficient to overcome the need for a disappointed landowner first to pursue, in a local court, whatever compensation might be available for inverse condemnation. *Id.* at 515. *Culebras* thus deflects—and mandates rejection of—this shot from appellant's sling.

Ochoa has made no effort to pursue redress under Commonwealth law. *Culebras* is, in this respect, squarely on point. Since we have held that exhaustion of state law remedies—whatever form they may take—is a precondition to the maintenance of a federal damages action under the Takings Clause, and since we have recently found that the remediation arguably available in

Puerto Rico is not so illusory as to call for a departure from the usual rule, *Culebras, supra,* at 514–15, we must perforce hold that the district court correctly dismissed the fifth amendment claims for money damages as premature.[4]

## V. CONCLUSION

The other arguments promulgated by Ochoa are either authoritatively resolved by *Culebras* or so devoid of even superficial merit that they do not warrant discussion. Furthermore, the view we take of this appeal renders it unnecessary for us to address the remaining points raised by the appellees. Inasmuch as the result is clear on the grounds we have mentioned, these other contentions (some of which were found by the court below to be dispositive) have become surplusage. *See Chongris, supra,* at 37 n. 1 (discussing power of appellate court "to affirm the judgment on [any] independently sufficient ground"); *Roy v. City of Augusta,* 712 F.2d 1517, 1520 n. 3 (1st Cir.1983) (same).

Ochoa's civil rights action could not have been allowed to proceed in the district court. The plaintiff's claims for equitable relief had become moot, and the attempt to secure money damages from the defendants was premature, given Ochoa's failure to exhaust available remedies in the Commonwealth's courts. The district court did not err in its disposition of that case. And, we are bereft of jurisdiction under 28 U.S.C. § 1447(d) to hear and determine Ochoa's appeal from the order remanding the expropriation suit to Puerto Rico superior court.

There is, however, one further matter which merits our attention. We award double costs and a counsel fee of $1000 to the appellee Luis F. Quinones, to be taxed against the appellant and its counsel, jointly and severally. 28 U.S.C. § 1927; F.R. A.P. 38. In addition to what has been

---

**4.** Although the plaintiff/appellant has also characterized its action as a claim for denial of due process, our analysis remains unaffected. As we observed in *Culebras,* so long as Puerto Rico provides a colorably adequate procedure for obtaining compensation where a landowner complains that his property has been "frozen" (and in that sense, "taken"), "there can be no violation of substantive due process ... at least until the state inverse condemnation proceeding is resolved." *Culebras, supra,* at 515–16.

discussed herein, the record conclusively demonstrates that Quinones had no involvement whatever with Ramal Este, and virtually no involvement with Agua-Guagua. In granting summary judgment in his favor, the district judge pointedly (and accurately) observed that the facts of record showed that he "did not participate in any of the alleged unconstitutional acts." Ochoa nevertheless pressed this appeal against Quinones, without any realistic hope of prevailing.

Quinones became the executive director of the Commonwealth's Land Administration in April 1984, and served only until that December, when he left the position. Ramal Este was, of course, a dead letter long before Quinones joined the agency. The plaintiff added him as a party defendant herein in October 1984, and retained him as a defendant despite an utter absence of proof that he had *any* personal involvement in Agua-Guagua.[5] Indeed, the Land Administration itself had only the most tenuous relationship with the project during the entirety of Quinones's abbreviated tenure; it was charged by law with supervising the appraisal of the property to be condemned and attempting to negotiate an acquisition price. The agency had no other or further role. Under settled principles of law applicable to § 1983 cases, Quinones could not, without more, be vicariously liable for the acts of his subordinates. *See Chongris, supra,* at 39 n. 5 ("the civil rights statutes impose no respondeat superior liability"). *See also Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Monell v. Department of Social Services,* 436 U.S. 658, 691–94 & n. 58, 98 S.Ct. 2018, 2036–37 & n. 58, 56 L.Ed.2d 611 (1978); *Guzman v. City of Cranston,* 812 F.2d 24, 25–26 (1st Cir.1987).

In his brief and at oral argument, Quinones's counsel asked that his client receive due consideration for being forced to defend such an ill-considered appeal. That request should be honored. *Compare Natasha, Inc. v. Evita Marine Charters, Inc.,* 763 F.2d 468, 472 (1st Cir.1985); *Good Hope Refineries, Inc. v. Brashear,* 588 F.2d 846, 848 (1st Cir.1978); *NLRB v. Smith & Wesson,* 424 F.2d 1072, 1073 (1st Cir.1970) (per curiam). We will not countenance frivolous impositions of this sort upon one's litigation adversaries. Hope may, as the aphorist would have it, spring eternal; but appeals founded on hope alone, unanchored in law or fact, should not be prosecuted.

*Affirmed.* Double costs, together with attorneys' fees in the amount of $1,000, awarded to appellee Quinones. Ordinary costs awarded to the remaining appellees.

---

**5.** Ochoa's asseveration that, because Quinones was also a director of the New San Juan Center Corporation (Center), he was somehow more deeply implicated in the proceedings, cannot be credited. Quinones was not sued in that capacity. Moreover, his service on the Center board was strictly *ex officio,* lasting only during his tenure with the Land Administration. And, there is not a scintilla of evidence in the record to suggest that the Center took any action concerning Ochoa's land in the brief interval from April to December, 1984.