**Surima SUÁREZ CESTERO, et al., Plaintiffs,**

v.

**Daniel PAGAN ROSA, et al., Defendants.**

**No. CIV. 97–2251(PG).**

United States District Court, D. Puerto Rico.

Feb. 23, 1998.

A.J. Bennazar–Zequeira, A.J. Bennazar Zequeira Law Offices, Laura Gonzalez–Lugo, Hato Rey, for Plaintiffs.

Hjalmar Flax, Dept. of Justice, John F. Nevares, Smith & Nevares, San Juan, PR, Miguel A. Pagan–Rivera, Francisco San–Miguel–Fuxench, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

### I. INTRODUCTION

Plaintiffs, Surima Suárez Cestero (Suárez), by herself, and in representation of and as one of the heirs of Marcial Suárez and Encarnación Fuentes, and the Estate of Marcial Suárez and Encarnación Fuentes ("the Estate"),[1] brought the present action under 42 U.S.C. § 1983 against defendants Daniel Pagán Rosa, in his personal and official capacities as Secretary of the Department of Natural Resources and the Environment ("Secretary" and "DNRE"); Ferdín Carrasquillo Ayala, in his personal and official capacities as Mayor of Loíza ("the Mayor"); Pedro Toledo, in his personal and official capacities as Superintendent of the Puerto Rico Police Department; and Carmelo Correa, in his personal and official capacities as Carolina Area Commander of the Puerto Rico Police Department, for alleged violations of their federal rights as protected by the Due Process Clause of the Fifth and Fourteenth Amendments and the Takings Clause of the Fifth Amendment to the Constitution of the United States. Jurisdiction is alleged pursuant to 28 U.S.C. § 1343(a)(3).

Plaintiffs aver that defendants, by their actions, (1) illegally and forcibly detained Suárez and prevented her from carrying out a lawful commercial activity in violation of her liberty rights as protected by the Fifth and Fourteenth Amendments; (2) deprived Suárez and the Estate of their property interest in the commercial enterprise without due process, in violation of the Fifth and Fourteenth Amendments; (3) caused or directed the occupation of plaintiffs' property, which was thus taken without just compensation in violation of the Takings Clause of the Fifth Amendment; (4) illegally stopped and continue to illegally impede the development of the "Lago del Palmar" project as it has been approved pursuant to the permits issued to it and have thus deprived the plaintiffs of their property interest in those permits without due process in violation of the Fifth and Fourteenth Amendments; (5) deprived Suárez of her property interest in the sand extraction permits issued to her without due process in violation of the Fifth and Fourteenth Amendments; (6) illegally stopped and intend to permanently stop the development of the "Lago del Palmar" project thereby taking it without just compensation in violation of the Fifth Amendment. Plaintiffs request that this Court issue a temporary restraining order, and a preliminary and permanent injunction against Pagán. Carrasquillo and Toledo to enjoin them from further action to prevent sand extraction pursuant to the permit granted Suárez, and to enjoin Toledo to provide adequate protection to those engaged in the sand extraction activities. Plaintiffs also request that defendants be held liable to them for damages amounting to not less than $400,-000.00 in losses, $23,000,000.00 for the alleged taking, $3,000,000.00 each to Suárez and Encarnación in compensatory damages, and not less than $5,000,000.00 in punitive damages. Before the Court are defendants' sundry motions to dismiss for lack of jurisdiction (Dkt. # 25, 31, 35 & 39), and plaintiffs' opposition thereto (Dkt. # 37), alleging that (1) plaintiffs' claim for injunctive relief has been rendered moot by newly enacted legislation, see S.J. Res. 398, 13th Leg., 2nd Sess. (P.R.1997) (enacted); (2) plaintiffs' § 1983 damages action is not ripe for failure to exhaust available state remedies; (3) the claims should be dismissed on qualified immunity grounds; and (4) the claims are barred by the Eleventh Amendment. Since the motions deal with essentially the same issues, the Court will address them jointly and by topic.

### II. PROCEDURAL & FACTUAL BACKGROUND

Before we begin, it should be noted that this case carries with it a baggage of state and administrative procedures which were

---

1. The Estate is constituted by Aida Miranda Cabrera, Juan Suárez Miranda, Melba Priscilla Suarez Gutierrez, Marcial Enrique Suárez Suárez, Clarisa Suárez de la Cruz, Marcial Eligio Suárez Vázquez, Argentina Candelaria Hernández, Serena Herminía Suárez Candelaria, Eduardo Cándido Suárez Dávila, Lydia Encarnación Suárez Dávila ("Encarnación") and Surima Suárez Cestero.

initiated long before the case was filed in federal court. In presenting the procedural background the Court will try to be as brief as possible.

Plaintiffs are the owners in fee simple of a parcel of land in the Medianía Baja Ward of the Municipality of Loíza. The parcel is located approximately 900 meters inland from the coast, 2.5 Km. East of the Río Grande de Loíza and 2.3 Km. West of the Río Herrera, with its only entrance located at Km. 8.4 of Puerto Rico State Road No. 187. In addition to her interest in the property as a member of the Estate. Suárez has a contract with the Estate for the extraction of sand from the property and a DNRE permit for its extraction. Plaintiff alleges that the extraction of sand from the property is the first phase of a residential project being developed by the Estate. The project has been denominated "Lago del Palmar" and will feature an artificial lake for the recreational activities of the future residents and flood reduction in the area.

Plaintiff allegedly sought and received approval for the project from the Aqueduct and Sewers Authority, the Puerto Rico Electric Power Authority, the Department of Transportation and Public Works, the Institute of Puerto Rican Culture, the Puerto Rico Telephone Company, the Puerto Rico Environmental Quality Board, as well as from the Municipality of Loíza and the DNRE. Plaintiffs allege that although the sand extraction was incidental to the project, as approved by all the aforementioned agencies, the DNRE additionally required that Suarez obtain an extraction permit. *See* P.R. Laws Ann. tit. 28, § 206 *et seq.* (1985). Suárez complied with all the application requirements and, after public notice and without opposition, the permit was issued on December 17, 1996. Plaintiffs claim they relied on the permit and commenced sand extraction on January, 1997.

On April 29, 1997, the Municipality filed a civil action in the Carolina Superior Court requesting a temporary restraining order, and temporary and permanent injunctions to prevent the extraction of sand from the property. They averred that the construction permits requested for Lago del Palmar were a subterfuge for obtaining a commercial sand extraction permit which would create an artificial lake without properly evaluating the individual and cumulative environmental impact on the surrounding area. The complaint was later amended to join the DNRE, the Puerto Rico Environmental Quality Board and ARPE as parties, as well as to make additional averments attacking the permits granted the Estate by these agencies.

Plaintiffs allege that on May 8, 1997, the Mayor mobilized trucks and machinery belonging to the Municipality of Loíza, together with several municipal employees and other persons, and led them to plaintiffs' property, where they allegedly blocked the entrance and departure of trucks working on the sand extraction and prevented Suárez and the truck drivers from leaving the property. Plaintiffs further allege that Suárez sought the protection of the Puerto Rico Police, but that Correa, who happened to be in the vicinity, ignored her request and refused to have a policeman take the necessary information to file criminal charges against the Mayor and the others who were forcibly denying access to the property. Plaintiffs also contend that Superintendent Toledo was appraised of the situation after Suárez' attorneys called the Loíza Police headquarters and requested their protection. Plaintiffs claim that the police, instead of intervening to protect Suárez in the exercise of her rights, assisted Carrasquillo and his followers in holding Suárez and the truck drivers hostage. The obstructive behavior on the part of the Mayor and the police continued for several days.

On May 8, while allegedly held hostage at the property, Suárez was served with the Carolina Superior Court complaint. Suárez and the Estate answered the complaint and counterclaimed, requesting a temporary restraining order and preliminary and permanent injunctions enjoining the Municipality from obstructing the sand extraction activities. They alleged that they had obtained all the necessary permits to effectuate the sand extraction and that the Municipality never expressed opposition to the expedition of such permits. They also requested monetary damages.

After a hearing on May 12, 1997, the Carolina Superior Court issued a TRO enjoining the extraction of sand for ten (10) days, and later extended it for an additional ten (10) days. On May 30, after another hearing and an on-site inspection, the Court issued a judgment granting the preliminary injunction, further enjoining the sand extraction for an additional 60 days and ordering the DNRE to carry out within that term an environmental evaluation. On June 23, the Estate and Suárez petitioned the Puerto Rico Court of Appeals, 7th Regional Circuit, to issue a writ of certiorari to review the trial court's issuance of the preliminary injunction, on the grounds that the trial court lacked jurisdiction. The Circuit Court denied the petition.

On August 4, 1997, the Carolina Superior Court denied the issuance of a permanent injunction and dismissed the Municipality's complaint "without prejudice of the determinations that may be reached by the pertinent forums with jurisdiction over this subject matter." Partial Sentence at 11, *Municipio de Loíza v. Sucesion Suárez Fuentes* (Sup.Ct.Carolina, Aug. 4, 1997) (No. FPE97–0332). To date, these civil proceedings have generated a considerable record. The Estate's counterclaim against the Municipality and the DNRE is still pending before the Carolina Superior Court and the Municipality has appealed the trial Court's refusal to grant the permanent injunction.

At the administrative level, we find concurrent on-going procedures which were initiated shortly after the sand extraction began. The DNRE initiated investigative proceedings and assigned two examiners to preside over the hearings. The public hearings commenced on March 21, 1997, after public notice. Suárez, among others, appeared and testified at the hearing. After analyzing the various papers submitted by the participants, the hearing examiners issued a report concluding that the sand extraction activities represented a grave threat to the public safety and recommending that sand extraction be paralyzed until integrated and rigorous technical studies were prepared. The panel also recommended that Suárez' extraction permits be revoked.

As part of the administrative proceedings, on June 6, 1997, the Secretary issued a Cease and Desist and Show Cause Order against Suárez enjoining her from further extraction activities and ordering her to show cause why the permits should not be modified and/or revoked. On June 24, Suárez filed an answer and requested an administrative hearing. After the Superior Court declined to issue the permanent injunction, Suárez notified the DNRE that its Cease and Desist Order was no longer valid because the Municipality's action had been dismissed, and that she was going to resume extraction activities. On August 8, Pagán Rosa notified Suárez that the administrative proceedings against her were to continue and that any request or petition should be presented by motion in the administrative case. Suárez then requested that the administrative case be dismissed and, on August 19, 1997, Suárez and the Estate filed the verified complaint and request for a TRO in the instant case.

The hearing on the requested injunctive relief was set for September 24. The day before the hearing, the Governor of Puerto Rico, the Honorable Pedro Roselló–González signed into law Joint Resolution of the Senate No. 398. The statute, of immediate effectiveness, declares a moratorium on the issuance of sand extraction permits by the DNRE in the Municipality of Loíza, and stays the effectiveness of all existing permits, pending an environmental study on the impact of sand extraction in the area. That same day defendants Pagán and Carrasquillo filed motions to dismiss for lack of jurisdiction. Toledo filed his the next day.

At the September 24 hearing, after oral arguments on the various dispositive motions filed by the co-defendants, the Court allowed defendants' request that these be ruled upon before entertaining plaintiff's petition for the issuance of a preliminary injunction, and ordered that simultaneous briefs be filed addressing the matters raised in the motions and oral arguments, namely: lack of jurisdiction, abstention, and other arguments raised under the Fifth and Fourteenth Amendments. The parties so complied.

## III. STANDARD

A motion to dismiss for failure to state a claim may be granted only if it clearly appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must accept as true the factual averments contained in the complaint, indulging every reasonable inference in favor of plaintiffs. *See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992). It is required to look only to the allegations of the complaint and if under any theory they are sufficient to state a cause of action, the motion must be denied. *See Knight v. Mills*, 836 F.2d 659, 664 (1st Cir.1987).

## IV. DISCUSSION

### A. The Equitable Claim

A federal court's jurisdiction is limited to adjudication of "cases" and "controversies." U.S. Const. art. III. This limitation serves the dual purpose of limiting the exercise of judicial power to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process," and defines the role assigned to the judiciary, ensuring that federal courts do not intrude upon areas committed to other branches of government. *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). This limitation has come to be known as the principle of justiciability. *See id.* If the controversy is not justiciable, the court's judgment cannot operate and there is no subject matter jurisdiction. *See DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *Liner v. Jafco, Inc.*, 375 U.S. 301, 306, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964); *Ex parte Baez*, 177 U.S. 378, 390, 20 S.Ct. 673, 44 L.Ed. 813 (1900). "[N]o justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and where there is no standing to maintain the action." *Flast, supra* (footnotes omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *see also Boston & Maine Co. v. Brotherhood of Maintenance*, 94 F.3d 15, 20 (1st Cir.1996). Defendants in the instant case argue that plaintiffs' claim for injunctive relief has been rendered moot by the recently enacted moratorium on sand extraction; that is, the issue is no longer "live" because injunctive relief would be ineffectual in light of the new legislation. *See S.J. Res. 398*, 13th Leg., 2nd Sess. (P.R.1997) (enacted). The Court agrees.

A controversy becomes moot when intervening legislation destroys the interest of a party in the adjudication. *See Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); *Bunker Ltd. Partnership v. United States*, 820 F.2d 308, 311 (9th Cir.1987); *Boston Chapter, NAACP v. Beecher*, 716 F.2d 931, 932 (1st Cir.1983). In this case, plaintiffs' interest in injunctive relief is abolished in the face of the enactment of Senate Joint Resolution 398. It is well settled that a court of equity should not issue an unenforceable injunction. *See Virginian Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937) ("[A] court of equity may refuse to give any relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff."); *Giles v. Harris*, 189 U.S. 475, 487, 23 S.Ct. 639, 47 L.Ed. 909 (1903); *In re Estate of Ferdinand Marcos*, 94 F.3d 539, 545 (1996). In the instant case, an injunction enjoining defendants from interfering with plaintiff's sand extraction activities would be, in fact, of no benefit to plaintiffs, since they are equally impeded by the moratorium. Wherefore, plaintiffs equitable claim is hereby DISMISSED as moot.

### B. The Damages Claims

With respect to the remaining claims, defendants contend that they should also be dismissed under abstention principles, for failure to exhaust state remedies, failure to state a claim upon which relief can be granted, and/or qualified immunity.

### 1. Abstention

■■■ Defendants argue in their briefs that the Court should, in its sound equitable discretion, and in deference to state administrative and judicial proceedings, refuse to exercise jurisdiction under *Burford* abstention principles. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). They argue that this case presents the kind of important state interest and need for uniformity that warrants abstention under *Burford. See id.* at 332–33. The Court, however, cannot effectuate an abstention-based dismissal in the instant case because the remaining claims are damages claims, not equitable in nature. In *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 1720, 135 L.Ed.2d 1 (1996), the Supreme Court of the United States reiterated that federal courts have a duty to exercise the jurisdiction conferred upon them by Congress. *See also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("[Federal courts have a ] virtually unflagging obligation . . . to exercise the jurisdiction given them."). It is only in exceptional circumstances, and when there are important countervailing state interests, that a federal court can decline to exercise its jurisdiction. *See Quackenbush, supra,* at 1720–21. The Supreme Court also explained that in actions "at law" abstention works differently than in actions "in equity." The authority to abstain *and dismiss* extends only to those cases in which the court has discretion to grant or deny relief—e.g., actions in equity or for declaratory relief. *See id.* at 1721–22. In actions at law, a federal court can only enter a stay order postponing adjudication of the dispute, it cannot altogether dismiss the federal suit:

> We have thus held that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court. By contrast, while we have held that federal courts may stay actions for damages based on absten-

tion principles, we have not held that those principles support the outright dismissal or remand of damages actions.

*Id.* at 1723. *Compare Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28–30, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (upholding district court's decision to stay action) *and Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 44, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970) (directing district court to "hold its hand" until the Puerto Rico Supreme Court authoritatively ruled on local question of law) *with Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188, 196, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959) (reversing district court's dismissal on abstention principles).

The Supreme Court declared in *Quackenbush* that it had not previously dealt with whether the abstention cases allow the remand or dismissal of damages actions. *See id.* at 1722. It explained that even though it held in *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 115, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), that a federal court should not entertain a § 1983 damages action against the validity of state tax systems on principles of comity, it subsequently held that that case was "about the scope of the § 1983 cause of action . . . not the abstention doctrines." *Quackenbush*, 116 S.Ct. at 1722. *See National Private Truck, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 587–89, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). *Quackenbush* is, thus, the only authority on abstention in damages actions.

■■■ A federal court cannot use the *Burford* abstention to dismiss or remand a case when the relief sought is not discretionary. Plaintiffs' remaining claims are damage claims, therefore, the only abstention alternative is staying the federal proceedings. *See DeMauro v. DeMauro*, 115 F.3d 94, 98 (1st Cir.1997). However, even though at first glance it might appear that this case is suitable for abstention, particularly in light of the DNRE's long standing policy of protecting Puerto Rico's sand deposits, *see* DNRE Order No. 2–93 (1993), the Court finds that after dismissing the taking claims on other grounds, *see infra*, the remaining due process claims have very little to do with Puerto

Rico's interest in protecting its sand resources. An abstention-based stay would accomplish nothing and is, therefore, not warranted.

## 2. Ripeness

 Defendants next argue that plaintiffs' taking claims (claims 3 and 6) should be dismissed as premature. The Court agrees. It is settled law that before pursuing a federal damages remedy for an alleged taking, a plaintiff must first resort to state inverse condemnation procedures. *See Williamson County Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Gilbert v. City of Cambridge*, 932 F.2d 51, 63 (1st Cir.1991) ("The nature of the [Fifth Amendment] requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action."); *Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 816–17 (1st Cir.1987).

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneous with, the taking; all that is required is that a "reasonable, certain and adequate provision for obtaining compensation" exist at the time of the taking.... [I]f a State provides an adequate procedure for seeking compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

*Williamson, supra*, at 194–95 (internal citations omitted).

While there is no Puerto Rico statute expressly providing for an inverse condemnation remedy, the Supreme Court of Puerto Rico has recognized the availability of such a remedy in cases where there has been a taking without just compensation. *See El Estado Libre Asociado De Puerto Rico, Etc. v. Northwestern Construction Inc.*, 103 D.P.R. 377, 383–84, 1975 WL 38849 (1975); *Heftler International, Inc. v. Planning Board*, 99 P.R.R. 454, 460 (1970). Moreover,

in *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 513–16 (1st Cir.1987), the First Circuit Court of Appeals recognized the availability of Puerto Rico's inverse condemnation remedy and held that a plaintiff must pursue said remedy before it can maintain a federal damages claim. *See also Ochoa, supra*, at 817. These proceedings provide the requisite means for obtaining compensation, and a Fifth Amendment claim for just compensation is not ripe until they have been exhausted.

Plaintiffs in the instant case have not taken advantage of Puerto Rico's inverse condemnation proceedings. Rather, they allege that their case does not fall under the precepts of *Williamson* because they do not complain of a regulatory taking. They argue that since they had initially complied with all the legal and regulatory requirements, they had nothing for which to seek redress by instituting an inverse condemnation proceeding under state law. They further argue that their case more appropriately falls under *Chalkboard, Inc. v. Brandt*, 879 F.2d 668 (9th Cir.1989), *amended and superceded by Chalkboard, Inc. v. Brandt*, 902 F.2d 1375 (9th Cir.1989) and *Freeman v. Blair*, 793 F.2d 166 (8th Cir.1986), *cert. granted, vacated*, 483 U.S. 1014, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987). Plaintiff's arguments are wrong.

First, in *Ochoa Realty Corp. v. Faria*, the First Circuit Court of Appeals rejected the notion that non-regulatory takings are exempted from the requirement of exhaustion of state law remedies. *See Ochoa, supra*, at 817 (stating that, in light of authoritative precedent, "Ochoa strives mightily, but in vain, to differentiate its case because 'this is a taking claim and not a regulatory taking claim.'"). Thus, plaintiffs' attempt to differentiate their case on the grounds that theirs is not a regulatory taking must fail. Exhaustion of available state remedies, such as inverse condemnation proceedings, is a precondition to maintaining a federal damages action under the Takings Clause, be it regulatory or otherwise. *See id.; Culebras, supra*, at 514–15.[2] Plaintiffs should have proceeded accordingly.

**2.** Even though it seems clear that plaintiffs tak- ing claims are grounded solely on the Fifth

Furthermore, the two cases cited by plaintiffs are no longer valid precedent. Plaintiffs failed to note that *Chalkboard* was amended and superceded by another case, and that the judgment in *Freeman* was vacated by the Supreme Court. *See Chalkboard, supra; Freeman, supra.* Nevertheless, the Court would like to note that, regardless of the fact that these cases are no longer good law, they are also not relevant to the taking allegations. Both cases deal with plaintiffs whose licenses were summarily suspended without a pre-deprivation hearing, but those claims were grounded in the Fourteenth Amendment Due Process Clause and made no reference to the Fifth Amendment Takings Clause. *See Chalkboard, supra,* at 669, 672; *Freeman, supra,* at 169. Thus, *Chalkboard* and *Freeman* are inconsequential.

Plaintiffs' taking claims are therefore **DISMISSED** as premature.

### 3. The Eleventh Amendment [3]

 It has been consistently held by the First Circuit Court of Appeals that the Eleventh Amendment applies to Puerto Rico as if it were a state. *See Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth.,* 991 F.2d 935, 939 (1st Cir.1993); *Fred v. Roque,* 916 F.2d 37, 38 (1st Cir.1990); *Culebras,* 813 F.2d 506, 516 (1st Cir.1987); *Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 697 (1st Cir.1983). This immunity is not limited to cases where the state is a named party, but extends to suits against entities which function as arms of the state. *See Mt. Healthy City Board of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). It is settled law that the Eleventh Amendment "bars the recovery of damages in *official capacity* suits brought against Puerto Rico officials where recovery will come from the public fisc." *Culebras, supra,* at 516. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Furthermore, whether a local entity, or public official, " 'is to be treated as an arm of the state partaking of the State Eleventh Amendment Immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend … depends, at least in part, upon the nature of the entity created by state law.' " *Culebras, supra,* at 516–17 (quoting *Mt. Healthy City, supra,* at 280). It has been held that the factors to consider are: (1) whether it performs a governmental function, (2) to what extent it is financed independently of the state treasury, (3) whether it functions with substantial autonomy, (4) and if a judgment sought to be entered against the agency will be satisfied out of the state treasury. *See Culebras, supra,* at 517; *Buck v. Puerto Rico Symphony Orchestra Corp.,* 849 F.Supp. 141, 144 (D.P.R.1994).

Plaintiffs in this case sued all defendants in both their individual and official capacities. However, inasmuch as they were sued in their *official capacities* the Court must determine whether the Eleventh Amendment comes into play. Otherwise, plaintiffs would be allowed to circumvent the Constitution through a mere pleading device.

 The Court finds that Correa and Toledo are clearly protected by the Eleventh Amendment. If it is settled law that the Puerto Rico Police Department is an alter

Amendment Takings Clause, the Court would like to highlight that this prerequisite also exists in taking claims grounded on alleged denials of due process. *See Williamson, supra,* at 199–200 ("We do not pass upon the merits of petitioners ['due process taking'] argument, for even if viewed as a question of due process, respondent's claim is premature."); *Ochoa, supra.* at 817 n. 4("[S]o long as Puerto Rico provides a colorably adequate procedure for obtaining compensation … 'there can be no violation of substantive due process … at least until the state inverse condemnation proceeding is resolved.' " (quoting *Culebras, supra,* at 515–16)).

**3.** The Court would like to note that defendants Toledo and Correa were the only ones to discuss the Eleventh Amendment in their motions. Nevertheless, since the Eleventh Amendment calls into question a federal court's jurisdiction, the Court is free to address the issue sua sponte as to those defendants who did not raise it in their motions. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67(1984) ("A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."); *Figueroa–Rodriguez v. Aquino,* 863 F.2d 1037, 1044 (1st Cir.1988); *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii,* 810 F.2d 869, 873 n. 2 (9th Cir.1987).

ego of the state and cannot be sued in federal Court. *See Rivera v. Medina,* 963 F.Supp. 78, 82 (D.P.R.1997); *Reyes v. Supervisor of Drug Enforcement Admin.,* 647 F.Supp. 1509, 1513 (D.P.R.1986), *modified on other grounds,* 834 F.2d 1093 (1st Cir.1987). As officers of the Puerto Rico Police Department, sued in their official capacity, Correa and Toledo share in that immunity.

With respect to the DNRE, there is no case-law dealing with this precise issue. The Court must therefore consider the nature of the Department and apply the factors mentioned above. By looking at the DNRE's enabling law, we find that it functions "as a government executive department," and is "responsible for implementing . . . the public policy of the Commonwealth of Puerto Rico" as it relates to the environment. P.R. Laws Ann. tit. 3, §§ 152–53 (1982). This necessarily means that it functions as an arm of the state. Moreover, since its funding comes directly from Puerto Rico's General Budget, *see id.* at § 159, it is evident that any judgment against the DNRE would be satisfied from the public fisc. This is precisely what the Eleventh Amendment prohibits. *See Culebras, supra,* at 144; *Buck, supra,* at 144–45. Thus, the DNRE and Pagán Rosa as Secretary, sued in his official capacity, are immune from suit in federal court.

Defendant Carrasquillo, on the other hand, as Mayor of Loíza, does not partake of Eleventh Amendment Immunity, because its protection does not extend to municipalities or their officials. *See Will, supra,* at 70; *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 691 n. 54, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Harter v. Vernon,* 101 F.3d 334, 337 (4th Cir.1996) ("The Eleventh Amendment . . . affords no protection to local government entities and employees.").

In conclusion, insofar as defendants Toledo, Correa and Pagán Rosa were sued for actions taken in their *official capacities* as members of agencies of Puerto Rico—i.e., the Puerto Rico Police and the DNRE—the damages claims are barred by the Eleventh Amendment. *See Will, supra,* at 71; *Culebras, supra,* at 516. Wherefore, those claims are hereby **DISMISSED** for lack of jurisdiction.

### 4. Qualified Immunity

Defendants also move for dismissal on the basis of qualified immunity. The Court, however, finds that this issue is best left for another day, and hereby **ORDERS** that parties submit briefs on the matter of qualified immunity as it relates to the remaining claims.

## V. CONCLUSION

To summarize, defendants' several motions to dismiss (Dkt. 25, 31, 35 & 39) are **GRANTED** in part and **DENIED** in part. The Court has hereby **DISMISSED** plaintiffs' equitable claim as moot; **DISMISSED** plaintiffs' Fifth Amendment taking claims (claims 3 and 6) as premature; and **DISMISSED** the *official capacity* suits against defendants Toledo, Correa and Pagán Rosa for lack of jurisdiction pursuant to the Eleventh Amendment: Plaintiffs due process claims under the Fifth and Fourteenth Amendments (claims 1, 2, 4 and 5) against Toledo, Correa and Pagán Rosa in their personal capacities, and against Carrasquillo in both his personal and official capacities are still pending before the Court. The Court has also **ORDERED** all parties to file briefs discussing qualified immunity as it affects these remaining claims.

**IT IS SO ORDERED.**