**LIBERTY CABLEVISION OF
PUERTO RICO, Plaintiff,**

v.

**MUNICIPALITY OF BARCELONETA,
et al., Defendants.**

No. CIV.01–2650IJP.

United States District Court,
D. Puerto Rico.

July 6, 2004.

Orlando Fernández, Esq., García & Fernández, San Juan, PR, for Plaintiff.

Luis F. Colón, Esq., Colón González Law Office, Old San Juan, PR, Eglee W. Pérez Rodríguez, Esq., San Juan, PR, Carmen S. Curet Salim, Esq., Hato Rey, PR, for Defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Before the Court is the novel issue of whether a party who is paying a franchise fee under federal law to one entity for use of municipal rights of way for cable television layout is obligated to pay an additional fee to the owner of those same rights of way, a municipality, for their use. For the foregoing reasons, the Court concludes that Plaintiff is obligated to compensate both the franchisor and the municipalities whose rights of way it uses.

Plaintiff in this case is Liberty CableVision of Puerto Rico, Inc., a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Luquillo, Puerto Rico. It is a cable television company which operates as a franchise to provide cable services to the Municipalities of Barceloneta, Las Piedras, Hatillo and Arecibo, among others. Co-Defendants Municipality of Barceloneta and Municipality of Las Piedras are local government entities. Co-Defendant Junta Reglamentadora de Telecomunicaciones de Puerto Rico (the Telecommunications Regulatory Board of Puerto Rico, or hereinafter, the "Board") is the state agency that regulates and supervises cable television access systems within the Commonwealth of Puerto Rico. The Board, as a local franchising authority, is also responsible for awarding cable franchises (in reality, licenses to operate cable systems) to cable systems operators in Puerto Rico.

Plaintiff claims that in November 2001, Co-Defendants Municipality of Barceloneta and Municipality of Las Piedras passed local ordinances that authorized them to charge a five percent (5%) fee on the gross revenue of Liberty's services within each Municipality for the use and maintenance of their respective rights of way and easements that connect Plaintiff's cable services throughout both Municipalities. Plaintiff alleges that both ordinances are null because the amount it pays to the Board as a franchise fee already encompasses the use of municipal rights of way.

Liberty's argument comes under the Federal Cable Act, 47 U.S.C. § 521, and the Puerto Rico Telecommunications Act, 27 P.R. Laws Ann. § 265 (West 2000). Liberty alleges that under said statutes, a cable entity that is granted a franchise must pay a franchise fee to the Board for the authorization to lay out its cable system and to provide cable services, and that said franchise fee specifically grants Liberty the use of public rights of way and municipal easements within the area served by the franchise. Therefore, Plaintiff alleges that this federal law preempts the field, that the additional fee imposed by the Municipality is incompatible with these federal and state laws, and therefore, duplicitous. It seeks a Declaratory Judgment that renders the ordinances null and void.

Co-Defendants Municipality of Barceloneta and Las Piedras allege that the Federal Cable Act and their municipal ordinances do not conflict. In addition, they

argue that the Board has effected a taking without just compensation in using their rights of way without providing them compensation therefor.

## II. ANALYSIS

### A. *Use of municipal rights of way*

Liberty argues that the applicable federal law in fact, merges the franchise fee with the fee for the use of municipal rights of way. Therefore, the 3% franchise fee it already pays to the Board encompasses both the franchise fee and the fee for use municipal rights of way.

The statute in question reads as follows:

Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure—

(A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;

(B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both; and

(C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

Liberty alleges that this language enables it to construct its cable system over public rights-of-way identical to those in the case at bar, and that therefore, the Municipality's additional levy is duplicitous. Traditionally, in cases where problems with the Cable Act have arisen, the Municipality has acted both as the franchisor as well as the owner of the municipal rights of way. *See generally, In the Matter of TCI Cablevision of Oakland Cty., Inc.,* 12 FCC Rcd. 21396 (FCC 1997) and 13 FCC Rcd. 16,400 (FCC 1998); *Keleher v. New England Tel. and Tel. Co.,* 947 F.2d 547 (2d Cir.1991); *Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371 (3d Cir.1978). Therefore, there was no obvious problem with the payment of use of municipal rights of way as in the case at bar, because the moneys paid went to the same entity.[1] What is interesting about this case is precisely that dichotomy: that the Board is the franchisor, but a different entity, the Municipality, is the owner of the rights of way being utilized.

Plaintiff relies on two cases for the proposition that private arrangements restricting a cable operator's use of rights of way or compatible easements is impermissible. *See Missouri–Kansas–Texas R.R. Co. v. Heritage Cablevision of Dallas, Inc.,* 783 S.W.2d 273 (Tex.App.—Dallas 1989); and *Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.,* 953 F.2d 600 (11th Cir.1992); *see also* H.R.Rep. No. 934, 98th Cong.2d Sess. 59, reprinted in 1984 U.S.C.C.A.N. 4655, 4696. Liberty further argues that the statute only provides for just compensation to the owner for any damages caused by the installation, construction, operation, or removal by the cable operator, and not for the use of and

---

**1.** *See Oakland County,* 13 FCC Rcd at Par. 48, "The franchising authority of the City is intertwined with its authority to manage the use of the public rights of way by the cable operators".

access to the rights of way. *See* 47 U.S.C. § 541(a)(2)(C).

Interestingly enough, unlike the case at bar, 47 U.S.C. 201–276, the telecommunications statute *specifically* provides for fair compensation from providers for their use of their public rights-of-way.

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.
47 U.S.C. 253(c).

*See also, In the Matter of Classic Telephone,* 11 FCC Rcd. 13082 (FCC 1986). Therefore, at first blush, it would seem like the Cable Act has no statutory counterpart to the Communications Act, and therefore, Plaintiff would be correct in stating that it does not have to pay the municipalities for its use of their rights of way. *See also, Cable Holdings of Georgia,* 953 F.2d at 606, *quoting* 130 Cong. Rec. H10444 (daily ed. Oct. 1, 1984, remarks of Rep. Fields, discussing a possible just compensation provision for the Cable Act, but which was ultimately rejected by Congress). However, the Cable Act does include very specific language regarding franchise fees, and what they do and do not encompass. Under the statute defining the franchise fee, the same is defined as:

(1) the term "franchise fee" includes any tax, fee, or assessment of any kind imposed by a franchising authority or other governmental entity on a cable operator or cable subscriber, or both, solely because of their status as such;
(2) the term "franchise fee" does not include—

(A) any tax, fee, or assessment of general applicability (including any such tax, fee, or assessment imposed on both utilities and cable operators or their services but not including a tax, fee, or assessment which is unduly discriminatory against cable operators or cable subscribers)

■ 47 U.S.C. § 542(g)(1) and (2). Therefore, it would also appear that under the Cable Act, other fees of general applicability could be charged, as long as they are imposed on utilities and cable operators for their services, and the same is not unduly discriminatory against cable operators or cable subscribers. *See also, Medlock v. Leathers,* 311 Ark. 175, 842 S.W.2d 428, 432 (1992) (stating that "When Congress defined 'franchise fee' in the Cable Act, it recognized that general taxes could be imposed on cable"). The Court finds this language is quite clear, and concludes that this language is directly applicable to the case at bar, since the municipal regulations in question apply to all utilities, such as water, electricity and telephone, as well as to Plaintiff's cable services. *See Barceloneta and Las Piedras Ordinances.*

■ After thoroughly analyzing the voluminous documents in the case at bar, the Court believes that the franchise fee in question encompasses only the fee for the "access", if you will, to the rights of way, and finds that the statute allows for the owners of the rights of way to also be compensated for such use. However, the Court's analysis is mindful of the factual intricacies of this case. Whereas before the distinction between the franchise fee and the use of the rights of way was nonissue, since the franchisor and the right of way owners were the same, that is no longer the case.

Thus, the Court is faced with the interesting question of deciding whether the

local entity should be additionally compensated in this instance. In analyzing this issue, the Court is also mindful that municipalities have traditionally owned, exercised control over and managed their rights of way. *See Oakland Cable,* 12 FCC Rcd. at 21441; 13 FCC Rcd. 16,400. That is no different in the case at bar, as evidenced by the deeds of ownership filed by Defendants with the Court (docket No. 46). Obviously, if the municipality was the franchisor, as in all other cases, this matter would be easily solved. But the Court is faced with a difficult quandary, one that it feels it must resolve fairly.

The cases Plaintiff relies on hold that any private arrangements restricting a cable operator's use of rights of way or compatible easements violate the provisions of the Act authorizing construction of cable systems over public rights of way". *See e.g., Cable Holdings of Georgia,* 678 F.Supp. 871, 873 (N.D.Ga.1986), *citing* H.R.Rep. No., 934, 1984 U.S.C.C.A.N., 4655, 4696. However, the case at bar has no private arrangements to speak of, as in *Georgia,* where a cable franchise operator brought suit to determine his right to access to private residential property. The case at bar involves municipal public property, which is distinctly different from a private residential building. Therefore, this distinction is inapposite.

■ For the aforementioned reasons, the Court holds that the statute provides for Municipal compensation for the use of their respective rights of way. *See* 47 U.S.C. § 542(g)(2). However, as previously stated, this function has traditionally been exercised only by the franchising au-

thority, traditionally the municipality, and therefore the Court's holding today keeps in mind the unique scenario presented by this case.[2] Therefore, the Court hereby **HOLDS** that Municipalities must be compensated for the use of their rights of way, in addition to the moneys that Plaintiff currently pays the Board. *See generally, In the Matter of the City of Miami, FL.,* 1984 FCC LEXIS 2446, 56 Rad. Reg.2d (P & F) 458 (1984) (where the FCC discussed "payments in kind", how they related to compliance with the cable franchise rules, and stated that the division of the 5% payment between the two entities was to be resolved between the two jurisdictions or the courts). However, the Court cannot ignore the 5% cap that Congress has imposed. *See* 47 U.S.C. § 542. Therefore, the Court holds that Plaintiff **SHALL** pay the Board a total of 1.5% as a franchise fee of the gross revenues it derives from the services it renders to *all municipalities as a whole;* and in addition, SHALL pay the Municipality of Las Piedras and Barceloneta each 1% of the gross revenues it derives from the services it renders *in each municipality* as compensation for Liberty's use of their municipal rights of way.

### B. *Taking Without Just Compensation*

The Municipality of Barceloneta and Las Piedras allege that the Board has effected a taking without just compensation. They cite Puerto Rico Municipal laws for the proposition that, "No public agency or entity of the government of the Commonwealth of Puerto Rico shall take over any real or personal property of a municipality, unless they comply with the procedure es-

---

**2.** See Legislative History for 47 U.S.C. § 542, stating that "Each local franchising authority *may* assess the cable operator a fee for the operator's use of public ways". (Emphasis added). House Report 98th Congress 2d Session, Report 98–934, Cable Franchise Policy and Communications Act of 1984 at 26; and *City of Miami,* 1984 FCC LEXIS 2446 *3, 56 Rad. Reg.2d (P & F) 458 (1984) (". . . the local government is entitled to be compensated for the use made of local rights of way and for the cost of regulation. . .").

tablished by law." 21 P.R. Laws Ann. § 4004(e). This law is the municipal counterpart to the United States Constitution's 5th Amendment, and the Puerto Rico Constitution's 9th Amendment, which state that no private property shall be taken for public use without just compensation and can only be done so in the manner provided by law. U.S. Const. Amend. 5; P.R. Const. Amend. 9.

Although the actions in the case at bar are not a taking within the literal meaning of the statute, since the Board did not take Defendants' "private" property for "public" use, the municipal law's purpose is geared to avoid precisely the effects of a taking: in this particular case, their argument is that government is effectively utilizing or taking over the municipality's property without compensating them for its use.

The U.S. Supreme Court has traditionally recognized that most cases arising under the Takings Clause fall into one of two categories: where the government authorizes a physical occupation of property or actually takes title ("physical taking"), or where government regulation of the property's use unfairly singles out the property owner to bear a burden that should be borne by the public as a whole ("regulatory taking"). *Yee v. City of Escondido*, 503 U.S. 519, 522–23, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982) (physical taking); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 123–125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978) (regulatory taking).

"The government effects a physical taking only where it requires the landowner to submit to the physical occupation of his land. This element of required acquiescence is at the heart of the concept of occupation.' " *Yee*, 503 U.S. at 527, 112 S.Ct. at 1528 (quoting *FCC v. Florida Power Corp.*, 480 U.S. 245, 252, 107 S.Ct. 1107, 1112, 94 L.Ed.2d 282 (1987)). A physical taking occurs, for example, when the government takes title to private property, floods a landowner's property, or installs a cable on that land. *See id.* The government must then provide compensation to the landowner who suffers the compelled physical invasion of his or her property. *See id.*

The government effects a regulatory taking, on the other hand, when it takes regulatory action that goes "too far." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992) (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)). The U.S. Supreme Court has found that a regulation that "denies all economically beneficial or productive use of land" constitutes a regulatory taking. *Id.* at 1015, 112 S.Ct. at 2893. Such a scenario, however, represents the most extreme form of a regulatory taking; other, less extreme factual scenarios may give rise to a taking action against the government, but such a determination "entails complex factual assessments of the purposes and economic effects of government actions." *Yee*, 503 U.S. at 523, 112 S.Ct. at 1525.

Here, Plaintiff's claim does not fall neatly into either of these two categories. However, the facts alleged more closely resemble an action for a physical taking, since it is utilizing a right of way properly belonging to another entity without compensating them for its use. Based on this, the Court concludes that both Municipalities have a colorable claim. *See Greater Worcester Cablevision, Inc., v. Carabetta Enterprises, Inc.*, 682 F.Supp. 1244 (D.Mass.1985).

Having concluded that Defendants have stated a claim for a taking under the Fifth and Fourteenth Amendments, the Court holds that this case is unripe because Plaintiff has not pursued the inverse condemnation remedy in the local courts. In other words, to the extent Defendants successfully argues that the Complaint sets forth a claim for just compensation, they are bound first to pursue the state inverse condemnation remedy based on the same allegations of fact.

The purpose of an inverse condemnation action is "to serve as a protection for the owners to force the State to comply with the constitutional provisions guaranteeing that no person shall be deprived of his property without due process of law and without having received compensation." *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 513 (1st Cir.1987) (quoting *Hefler Int'l, Inc. v. Planning Bd.*, 99 P.R.R. 454, 460 (Puerto Rico 1970)). Undoubtedly, this is what the Puerto Rico Municipal law meant when it stated that no public or government agency would take over municipal property "unless they comply with the procedure established by law". See 21 P.R. Laws Ann. § 4004(e).

The Puerto Rico Supreme Court has recognized the availability of an inverse condemnation remedy in cases involving a physical occupation, the taking of a property interest, or a regulatory taking. *See Aner Investment Corp. v. Junta de Planificacion*, 1999 WL 33521004, 148 D.P.R. 241 (P.R.1999); *Culebra Enterprises, Corp. v. Estado Libre Asociado de Puerto Rico*, 1997 WL 870831, 143 D.P.R. 935 (P.R.1997); *Hampton Development Corp. v. Estado Libre Asociado de Puerto Rico*, 139 P.R. Dec. 877, 888 (Puerto Rico 1996); *see also Culebras Enterprises*, 813 F.2d at 515. Thus, Plaintiff must pursue the Commonwealth's inverse condemnation remedy "before [it] can maintain a federal dam-

ages claim, since, when fleshed out by the local court, that remedy could well provide the 'certain and adequate' relief" it seeks. *Culebras Enterprises*, 813 F.2d at 515.

In *Culebras Enterprises*, the Court noted that "Puerto Rico's inverse condemnation remedy ... has not been fully spelled out by the Supreme Court of Puerto Rico and its implications for the present situation are thus unclear." *Id.* at 514. It found that because the Puerto Rico Supreme Court had signaled the existence of an inverse condemnation remedy, that plaintiff was obligated to pursue the remedy notwithstanding a lack of clarity as to its contours. *See id.* at 515. The Court further rested its holding on the grounds that the plaintiff had not sustained its burden of establishing the inadequacy of that remedy. *See id.* This district also has recognized that "[s]o long as local law provides a colorably adequate procedure for obtaining compensation where a landowner claims that his property has been taken, 'there can be no violation of substantive due process, at least until the state inverse condemnation proceeding is resolved.' " *Asociacion de Pescadores de Vieques, Inc. v. Santiago*, 747 F.Supp. 134, 138 (D.Puerto Rico 1990) (quoting *Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 817 (1st Cir.1987)).

Accordingly, the Court finds that Defendants must avail themselves of the state inverse condemnation remedy before filing a federal action. *See Ochoa Realty*, 815 F.2d at 816–17 ("[W]e have held that exhaustion of state law remedies—whatever form they may take—is a precondition to the maintenance of a federal damages action under the Takings Clause, and [ ] we have recently found that the remediation arguably available in Puerto Rico is not so illusory as to call for a departure from the usual rule.").

In addition, it has been well established that in order to prevail on a claim in

a takings action, "'the claimant must either avail himself of the remedies guaranteed by state law or prove that the remedies are inadequate.'" *Id.* at 515 (quoting *Hudson v. Palmer,* 468 U.S. 517, 539, 104 S.Ct. 3194, 3207, 82 L.Ed.2d 393 (1984)). Defendants have not marshaled any proof evidencing either that they availed themselves of said remedies, or of the inadequacy of the local remedies. As they have failed to pursue the state remedy or prove the inadequacy thereof, the Court does not have jurisdiction, under the prudential doctrine of ripeness, to entertain these claims. *See id.; Culebras Enterprises,* 813 F.2d at 515; *Santiago,* 747 F.Supp. at 138. Therefore, the Court cannot rule on Defendants' takings claim at this time.

## III. CONCLUSION

For the aforementioned reasons, the Court hereby holds that: the statute provides for Municipal compensation for the use of their respective rights of way; the Municipalities must be compensated for the use of their rights of way, in addition to the moneys that Plaintiff currently pays the Board; Plaintiff **SHALL** pay the Board a total of 1.5% as a franchise fee of the gross revenues it derives from the services it renders to *all municipalities as a whole;* Plaintiff **SHALL** pay the Municipality of Las Piedras and Barceloneta each 1% of the gross revenues it derives from the services it renders *in each municipality* as compensation for Liberty's use of their municipal rights of way; and, since Defendants' takings claims are unripe, the Court has no jurisdiction to hear them.

**IT IS SO ORDERED.**