# United States Court of Appeals

## For the First Circuit

No. 04-1597

LIBERTY CABLEVISION OF PUERTO RICO, INC.,
Plaintiff, Appellee,

v.

MUNICIPALITY OF CAGUAS,
Defendant, Appellant,

WILLIAM MIRANDA-MARIN, Mayor of the Municipality of Caguas;
TELECOMMUNICATIONS REGULATORY BOARD OF PUERTO RICO,
Defendants.

Nos. 04-2136, 04-2137

LIBERTY CABLEVISION OF PUERTO RICO, INC.,
Plaintiff, Appellant,

v.

TELECOMMUNICATIONS REGULATORY BOARD OF PUERTO RICO,
Defendant, Appellant,

MUNICIPALITY OF BARCELONETA; MUNICIPALITY OF LAS PIEDRAS,
Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, U.S. District Judge and
Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before
Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Oberdorfer,[*] Senior District Judge.

---

[*] Of the District of Columbia, sitting by designation.

Eyck O. Lugo-Rivera, with whom Humberto Guzmán-Rodríguez, Eliseo Roques and Martínez Odell & Calabria, were on brief, for Municipality of Caguas.

Orlando Fernández, with whom Orlando Fernández Law Offices, was on brief, for Liberty Cablevision of Puerto Rico, Inc.

Robert F. Reklaitis, with whom Leslie Paul Machado and Nixon Peabody LLP, were on brief, for Telecommunications Regulatory Board of Puerto Rico.

Luis F. Colón-González, with whom Colón González Law Firm, was on brief, for the Municipality of Barceloneta.

Enrique R. Siaca, with whom Quiñones & Sánchez, P.S.C., was on brief, for amicus curiae Centennial Puerto Rico Cable TV Corp.

---

August 9, 2005

---

**TORRUELLA**, **Circuit Judge**.  These consolidated and conflicting cases present a novel question: whether municipal ordinances which assess gross revenue fees on cable providers for use of the municipalities' "rights-of-way" -- when similar fees are already assessed by the state "local franchising authority" in accordance with the Cable Communications Policy Act of 1984, 47 U.S.C. § 521, et seq. (1984) ("Cable Act") -- conflict with the federal statute and are therefore preempted.  We answer in the affirmative, and accordingly reverse and remand the Barceloneta case and affirm the Caguas case.

**I**

This appeal stems from two separate cases brought by Liberty CableVision of Puerto Rico -- one against the municipality of Caguas, the other against the municipalities of Barceloneta and Las Piedras -- challenging ordinances which impose a 5% annual fee on Liberty's gross revenues for use of the municipalities' rights-of-way.  The Telecommunications Regulatory Board of Puerto Rico ("Board") -- which assesses franchise fees for use of these rights-of-way, 27 P.R. Laws Ann. § 269h, and which has been designated by the Puerto Rico Legislative Assembly as the local franchising authority in accordance with the Cable Act, id. -- was named as co-defendant in these suits.  In essence, Liberty argued that the Cable Act necessarily preempts these ordinances because its use of rights-of-way are already accounted for in the franchise fee paid

-3-

to the Board -- which, as the state's designated local franchising authority under the Cable Act -- is the lawful entity to assess such fees.

On March 10, 2004, the district court in the Caguas case entered summary judgment for Liberty. Liberty Cablevision of Puerto Rico, Inc. v. Municipality of Caguas, No. 02-2429 (D.P.R. Mar. 10, 2004). The court held that because Liberty "already pays five percent of its yearly revenues to the Board, which is the maximum allowed by the Cable Act, Caguas cannot impose the additional fee mandated by the ordinance. Therefore, the [o]rdinance is preempted by the Cable Act as applied to Liberty as a cable operator." Id. at 17 (footnote omitted). The court also found the fee unjustifiable under § 253 of the Telecommunications Act of 1996, despite Liberty's provision of cable modem service, because the Federal Communications Commission ("FCC") determined that cable modem service was not "telecommunications service" under the Communications Act, and because cable modem uses the same transmission lines as cable television and thus imposes no extra burden on Caguas.[1] Id. at 17-18.

---

[1] If cable modem service were a "telecommunications service," then Liberty arguably would be liable to the municipalities for its use of their rights-of-way under § 253 of the Telecommunications Act of 1996, 110 Stat. 56, despite any language in the Cable Act to the contrary.

On July 2, 2004, the district court in the Barceloneta case[2] arrived at the opposite conclusion: "Municipalities must be compensated for the use of their rights of way . . . ." Liberty Cablevision of Puerto Rico v. Municipality of Barceloneta, 326 F. Supp. 2d 236, 240 (D.P.R. 2004). In so holding, the court found that these municipalities are "owners" of the rights-of-way, and must be compensated as such, while the franchise fee paid to the Board solely encompasses "access." Id. at 239. The court pointed out that unlike most United States jurisdictions where the municipality is both the franchisor and "owner" of the rights-of-way, in Puerto Rico, the "Board is the franchisor, but a different entity, the Municipality, is the owner of the rights of way being utilized." Id. at 238. Thus, the court ordered Liberty to pay the Board a franchise fee of 1.5% of the gross revenues it derives from all municipalities, and, in addition, pay Barceloneta and Las Piedras 1% of the gross revenues from services it derives from those municipalities.[3] Id. at 240. The court also recognized that the municipalities would be able to state a federal takings claim for Liberty's use of their rights-of-way once they had exhausted the state remedy of an "inverse condemnation action." Id. at 242.

---

[2] This case involves the municipalities of Barceloneta and Las Piedras.

[3] The court fashioned these numbers without much explanation nor case law.

-5-

This appeal follows. For the sake of simplicity -- given the parties' dual roles as both appellants and appellees, and given their myriad claims -- we organize the issues as follows: (1) whether the Cable Act preempts these municipal ordinances; (2) whether the municipal fees are nonetheless justified under § 253 of the Telecommunications Act of 1996 due to Liberty's provision of cable modem service; and (3) whether the municipalities are entitled to just compensation for the alleged constitutional takings. As always, we review these abstract issues of law de novo. See, e.g., Global Naps, Inc. v. Verizon New England, Inc., 396 F.3d 16, 23 (1st Cir. 2005).

**II**

**A. Preemption**

In 1984, Congress enacted the Cable Act, 47 U.S.C. § 521 (amending the Communications Act of 1934, 47 U.S.C. § 151 et seq.), to establish a national framework for regulating cable television. See F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 309 (1993). The Act sought to "'encourage the growth and development of cable systems and . . . [to] assure that cable systems are responsive to the needs and interests of the local community.'" Id. (quoting § 601(2), 47 U.S.C. § 512(2)). That is, Congress, in enacting the Cable Act, "was concerned both with relieving the cable industry from unnecessary, burdensome regulation and with ensuring that cable systems remain responsive to the needs of the public."

-6-

American Civil Liberties Union v. F.C.C., 823 F.2d 1554, 1559 (D.C. Cir. 1987).

To these ends, the Act empowered the "franchising authority" -- which is defined as "any governmental entity empowered by Federal, State, or local law to grant a franchise," 47 U.S.C. § 522(10) -- to impose a maximum of 5% of gross revenues as "franchise fees," 47 U.S.C. § 542(b).

Franchise fees include "any tax, fee, or assessment of any kind imposed by a franchising authority or governmental entity on a cable operator or cable subscriber, or both, solely because of their status as such." 47 U.S.C. § 542(g)(1). The term, however, specifically excludes any "tax, fee, or assessment of general applicability (including any such tax, fee, or assessment imposed on both utilities and cable operators or their services but not including a tax, fee or assessment which is unduly discriminatory against cable operators or cable subscribers)." 47 U.S.C. § 542(g) (2)(A). Franchise fees may be passed directly to customers, 47 C.F.R. § 76.922 (2002), and itemized on the customers' bills, 47 U.S.C. § 542(c).

The award of a franchise allows a cable operator to use, among others, the public rights-of-way. 47 U.S.C. § 541(a)(2) ("[a]ny franchise shall be construed to authorize the construction of a cable system over public rights-of-way"). "[A]ny provision of law of any State, political subdivision, or agency thereof . . .

which is inconsistent with [the Cable Act] shall be deemed to be preempted and superceded."  47 U.S.C. § 556(c).

In the case of Puerto Rico, its legislature created an agency -- the Telecommunications Regulatory Board of Puerto Rico -- to be its "franchising authority" under the Cable Act.  27 P.R. Laws Ann. § 265 et seq.  The enabling legislation, enacted on September 12, 1996, vested the Board with the authority, among others, to grant cable franchises, 27 P.R. Laws Ann. § 269h ("[t]he Board shall be empowered to grant nonexclusive franchises to one or more cable companies"), and to assess cable franchise fees, 27 P.R. Laws Ann. § 267j(h) ("franchise fees . . . shall be paid in full to the Board as of the effective date of this Act").

On September 25, 2001, the Board renewed Liberty's franchise to operate cable systems in several municipalities, including Caguas (Franchise FC-59), Barceloneta (Franchise FC-41), and Las Piedras (Franchise FC-59).  The franchise agreements granted Liberty, among other things, "extensive and valuable rights to operate its cable system for profit using the public rights-of-way and public utility easements within the franchise area."

In November 2001, the municipalities of Barceloneta[4] and Las Piedras[5] enacted ordinances imposing a 5% fee for the use of rights-of-way within those municipalities. Caguas enacted a similar ordinance on February 21, 2002.[6]

We now invalidate these ordinances to the extent they conflict with the Cable Act. It is established beyond peradventure that under the Supremacy Clause, U.S. Const. art. VI, cl. 2,

---

[4] The Barceloneta ordinance authorized:

the collection of 5% of the gross income of any invoice made out by telecommunication, cable TV and utilities services located at the Municipality of Barceloneta. This tax is for the use and maintenance of municipal rights of way of easements.

Barceloneta, P.R., Ordinance 16 (Nov. 2, 2001).

[5] The Las Piedras ordinance authorized:

the Director of Finance to regulate and impose the collection of five percent (5%) of the gross income of all billings for the use and maintenance of the right of way easements to public properties and utilities of the Municipality of Las Piedras to the providers of telecommunications services, cable TV and similar utilities.

Las Piedras, P.R., Ordinance 16 (Nov. 7, 2001).

[6] The Caguas ordinance authorized:

regulations to charge for the use and maintenance of the municipal rights of way to telecommunications, cable TV, and public utility companies that do business, or carry out operations in the Municipality of Caguas using these rights of way. The charge shall be equal to 5% of the gross income of all the services provided and billed to their clients and subscribers during the year.

Caguas, P.R., Ordinance 02A-42 (Feb. 21, 2002).

federal law preempts inconsistent state law when: (1) "Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law;" (2) "it is clear, despite the absence of explicit preemptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby left no room for the States to supplement federal law;" and (3) "compliance with both state and federal law is impossible," or (4) "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698-99 (1984) (internal quotations and citations omitted); see also Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 703 (1st Cir. 1994). "[F]or the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws." Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985).

In the instant case, Congress has made it "unmistakably clear" that the Cable Act will preempt any inconsistent state or local law: "any provision of law of any State, political subdivision, or agency thereof . . . which is inconsistent with [the Cable Act] shall be deemed to be preempted and superceded," 47 U.S.C. § 556(c). See generally Gregory v. Ashcroft, 501 U.S. 452, 460-61 (1991) ("[I]f Congress intends to alter the 'usual

constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'") (alteration in original) (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242 (1985)). Given the clear congressional intent to preempt, our inquiry focuses on whether these ordinances conflict with the Cable Act, and we find that they do. As outlined, the Act explicitly designated the "franchising authority" as the grantor of franchises and assessor of "franchise fees," 47 U.S.C. § 522(10); 47 U.S.C. § 542(b), in exchange for which the franchisee cable operator may use the public "rights-of-way," 47 U.S.C. § 541(a)(2). In Puerto Rico, the legislature chose to designate a state agency -- the Board -- as its "franchising authority," 27 P.R. Laws Ann. § 265 et seq., as opposed to granting that power to its various municipalities like most United States jurisdictions. The Board, in granting a franchise to Liberty, enables Liberty to use the public "rights-of-way" within the municipalities. See 47 U.S.C. § 541(a)(2); Franchise Agreements. Therefore, the municipalities' attempts to assess fees for use of these same rights-of-way are inconsistent with the Cable Act and are necessarily preempted.

Our finding is supported by the fact that the ordinances "stand[] as . . . obstacle[s] to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the Cable Act. Capital Cities Cable, 467 U.S. at 699 (internal

-11-

quotation omitted).  As explained, Congress "was concerned both with relieving the cable industry from unnecessary, burdensome regulation and with ensuring that cable systems remain responsive to the needs of the public."  American Civil Liberties Union, 823 F.2d at 1559.  We fail to see how a significant increase in franchise fees -- 3% by the Board[7] plus 5% by the municipalities, for use of the same public rights-of-way -- would not amount to "unnecessary, burdensome regulation," particularly in light of Congress's explicit intent that such fees be capped at 5%, see 47 U.S.C. § 542(b).  Moreover, given that franchise fees may be passed directly to consumers, see 47 C.F.R. § 76.922 (2002), which we suspect will certainly be the case, we find it difficult to accept how a significant increase in franchise fees would at all ensure that "cable systems remain responsive to the needs of the public." American Civil Liberties Union, 823 F.2d at 1559.  Thus, we find these ordinances constitutionally infirm to the extent they conflict with the Cable Act.

The municipalities nonetheless argue that they are entitled to compensation as "owners" of these rights-of-way.  We disagree.  It is well established that municipalities possess no inherent powers, as all such powers are derived from the state. See generally John F. Dillon, Commentaries on the Law of Municipal

---

[7]  The Renewal Franchise Agreements between the Board and Liberty assess a 3% franchise fee, which can be increased to 5% after proper notice and a hearing.

Corporations 1846-1847 (5th ed. 1911) ("As the highways of a State, including streets in cities, are under the paramount and primary control of the legislature, and as all municipal powers are derived from the legislature, it follows that the authority of municipalities over streets . . . depends . . . entirely upon their charters or the legislative enactments . . . ."). The Puerto Rico Constitution, for example, empowers the "Legislative Assembly to create, abolish, consolidate and reorganize municipalities," P.R. Const. art. VI, § 1, which power has been recognized by the Puerto Rico Supreme Court. López v. Commonwealth of Puerto Rico, 21 P.R. Offic. Trans. 71, 81 (P.R. 1988) ("our legal order basically embodies the legislative idea that municipalities are exclusively fashioned by the Legislature or are created by the government") (citations omitted). Some courts have recognized that the ownership interest municipalities hold in their streets is "governmental," and not "proprietary," and thus municipalities are not necessarily entitled to compensation. See, e.g., City & County of Denver v. Qwest Corp., 18 P.3d 748, 761 (Colo. 2001) (en banc); AT & T Corp. v. Vill. of Arlington Heights, 620 N.E.2d 1040, 1044 (Ill. 1993); City of New York v. Bee Line Inc., 284 N.Y.S. 452, 456 (N.Y. App. Div. 1935). Moreover, even "when the fee of the streets is in the city, in trust for the public," it is "a mistake to suppose . . . [that] the city is constitutionally and necessarily entitled to compensation." Hodges v. W. Union Tel. Co., 18 So. 84,

-13-

85 (Miss. 1895) (internal quotation omitted). See generally Gardner F. Gillespie, Rights-of-Way Redux: Municipal Fees on Telecommunications Companies and Cable Operators, 107 Dick. L. Rev. 209, 212-15 (2002). This is because municipalities generally possess no rights to profit from their streets unless specifically authorized by the state. Id. at 215 (citing People v. Kerr, 27 N.Y. 188, 212 (1863)).

In the instant case, Puerto Rico empowers each municipality to "[e]xercise its legislative and executive powers in any matter of a municipal nature, . . . subject to applicable legislation." 21 P.R. Laws Ann. § 4051(o) (emphasis added). Despite this autonomy, "every municipal ordinance must be in harmony with [state] government law, which shall prevail in conflicting situations." López, 21 P.R. Offic. Trans. at 84 (citations omitted). Thus, "[e]ven in matters of a municipal nature, the Municipal Assembly has no authority to intervene when the Legislative Assembly has preempted that particular field." Id. (internal quotation and citation omitted). Here, the Legislative Assembly created the Board as its sole franchising authority, 27 P.R. Laws Ann. § 269h, and gave it broad powers, 27 P.R. Laws Ann. § 267i, including the power to grant franchises and to assess franchise fees for use of the rights-of-way, 27 P.R. Laws Ann. § 267j(h). We therefore find that the municipalities' attempts to regulate cable companies by charging franchise fees for the rights-

-14-

of-way conflict with Puerto Rico legislation and necessarily fail. Cf. Van Meter v. Township of Maplewood, 696 F. Supp. 1024 (D.N.J. 1988) (in the federal preemption context, federal regulation may preempt local law if the agency intended to exercise exclusive authority in the area and the agency is legally authorized to displace local regulation). Moreover, the lack of state authorization permitting municipalities to charge franchise fees for use of the rights-of-way[8] further supports our rejection of the municipalities' argument for compensation as "owners" of these rights-of-way.

---

[8] We note that in September 2004, the Puerto Rico Legislative Assembly amended the Puerto Rico Autonomous Municipalities Act, 21 P.R. Laws Ann. § 4001 et seq., to enable municipalities to assess fees for use of the public rights-of-way. We read this to mean that prior to such enactment, the municipalities possessed no such power to assess those fees. See, e.g., Duncan v. Walker, 533 U.S. 167, 174 (2001) ("statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (internal quotations and quotation marks omitted); Herman v. Héctor I. Nieves Transp., Inc., 244 F.3d 32, 36 (1st Cir. 2001) ("A primary canon of statutory construction is that a statute should be construed so as not to render any of its phrases superfluous.") (citation omitted). In any event, the new legislation fails to apply retroactively to these ordinances. See, e.g., Rivera-Flores v. Puerto Rico Tel. Co., 64 F.3d 742, 751-52 (1st Cir. 1995) ("In Puerto Rico, statutes generally are presumed to have prospective effect only, unless the statute expressly or by inescapable inference demonstrates a contrary legislative intent.") (citing P.R. Laws Ann. tit. 31, § 3 (no retroactive application of statutes absent express retroactivity provision); Vélez Reboyrás v. Sec'y of Justice, 115 D.P.R. 533 (1984); Landgraf v. USI Film Prods., 511 U.S. 244 (1994)). We also note that this recent authorization does not necessarily mean that the municipalities involved could come back and enact ordinances identical to the ones at issue without contravening the Cable Act.

Neither do we find the municipalities' argument that their assessments are of "general applicability," and therefore not "franchise fees" under the Cable Act, persuasive. The House Committee defined a "tax of general applicability" to include:

> such payments as a general sales tax, an entertainment tax imposed on other entertainment businesses as well as the cable operator, and utility taxes or utility user taxes which, while they may differentiate the rates charged to different types of utilities, do not unduly discriminate against the cable operator so as to <u>effectively constitute a tax</u> directed at the cable system.

H.R. Rep. No. 98-934, at 64 (1984) (emphasis added). In determining whether the municipal assessments "effectively constitute a tax directed at the cable system," <u>id.</u>, we examine the "revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation." <u>San Juan Cellular Tel. Co.</u> v. <u>Public Serv. Comm'n of Puerto Rico</u>, 967 F.2d 683, 685 (1st Cir. 1992) (collecting cases).

Here, instead of assessing a general tax for the general benefit of the public, the municipal ordinances target a small group for regulatory costs associated with the "use and maintenance of municipal rights of way." Barceloneta, P.R., Ordinance 16 (Nov. 2, 2001); <u>see also</u> Las Piedras, P.R., Ordinance 16 (Nov. 7, 2001); Caguas, P.R., Ordinance 02A-42 (Feb. 21, 2002). This is

-16-

nothing short of a prototypical franchise fee. See San Juan Cellular, 967 F.2d at 685. Moreover, given that Liberty already pays the Board a 3% franchise fee for use of the public rights-of-way, we fail to see how the municipalities' more-than-double assessment for the same usage would not be "unduly discriminatory." 47 U.S.C. § 542 (g)(2)(A). Our finding is supported by the fact that Liberty also pays these municipalities license taxes ("patentes") -- which are quintessential taxes of "general applicability" -- for income derived from the municipalities. We therefore find that the franchise fees are not assessments of "general applicability" that would fall outside the purview of Cable Act preemption.

For the reasons stated, we invalidate these ordinances as preempted by the federal Cable Act.

## B. The Telecommunications Act and Cable Modem Service

The municipalities alternatively argue that Liberty's provision of cable modem service makes it a "telecommunications carrier" subject to fees under § 253 of the Telecommunications Act of 1996, 110 Stat. 56. We are not convinced.

The Telecommunications Act of 1996, which amends the Communications Act of 1934, 48 Stat. 1064, as amended, 47 U.S.C. § 151 et seq., "regulates telecommunications carriers, but not information service providers, as common carriers." National Cable & Telecomms. Ass'n v. Brand X Internet Servs., 125 S. Ct. 2688,

-17-

2696 (2005).  Unlike "information service" providers -- <u>i.e.</u>, those "offering . . . a capability for . . . processing . . . information via telecommunications," 47 U.S.C. § 153(20), "telecommunications carriers" -- <u>i.e.,</u> those "offering . . . telecommunications for a fee directly to the public . . . regardless of the facilities used," 47 U.S.C. § 153(46), are subject to mandatory Title II regulation.  <u>Nat'l Cable</u>, 125 S. Ct. at 2696.  Of particular relevance to this case is § 253, which provides:

> Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from <u>telecommunications providers</u>, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

47 U.S.C. § 253(c) (emphasis added).

The municipalities urge us to follow <u>Brand X Internet Serv.</u> v. <u>F.C.C.,</u> 345 F.3d 1120 (9th Cir. 2003), and <u>AT & T Corp.</u> v. <u>Portland</u>, 216 F.3d 871 (9th Cir. 2000), instead of the FCC's Declaratory Ruling in <u>In re Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities</u>, 17 FCC Rcd. 4798, 4802-4803, ¶ 9 (2002), to hold that cable modem service is a "telecommunications service," thereby making Liberty liable for "fair and reasonable compensation" for its use of the "public rights-of-way."  47 U.S.C. § 253(c).

This issue has recently been foreclosed by <u>National Cable</u>, 125 S. Ct. at 2688. In that case, the Supreme Court upheld the FCC's conclusion that cable modem service is not a "telecommunications service" subject to Title II common-carrier regulation as a lawful construction of the Communications Act under <u>Chevron U.S.A. Inc.</u> v. <u>Natural Resources Def. Council, Inc.</u>, 467 U.S. 837 (1984), and the Administrative Procedure Act, 5 U.S.C. § 555 <u>et seq.</u> <u>Id.</u> at 2695. As such, we reject the municipalities' argument that Liberty's provision of cable modem service renders it liable for fees as a "telecommunications provider" under the Telecommunications Act.

## C. <u>Takings and Just Compensation</u>

Finally, the municipalities argue that Liberty's use of their rights-of-way constitutes a physical taking subject to just compensation under Federal and Puerto Rico laws. U.S. Const. amend. V; P.R. Const. amend. IV; 21 P.R. Laws Ann. § 4004(e). We need not reach this issue. Even assuming <u>arguendo</u> that this is an actionable claim, it is a quarrel involving the municipalities and the state legislature, not Liberty, and is therefore beyond the scope of this opinion.

### III

For the foregoing reasons, the <u>Barceloneta</u> decision is **reversed and remanded**, and the <u>Caguas</u> decision is **affirmed**, consistent with this opinion.

-19-